TIMOTHY B. McCAFFREY, JR. (S.B. #192114)
CHESLER McCAFFREY, LLP
11661 San Vincente Boulevard, Suite 304
Los Angeles, California 90049
Telephone: (310) 882-6407
Facsimile: (310) 882-6359
Email: tbm@cmlegal.com

Attorney for Defendant,
Marriott International, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICIA BINGHAM,<br>Plaintiffs<br>vs.<br>MARRIOTT INTERNATIONAL, INC.,<br>Defendant. | Case No.: 8:21-cv-00836 JLS(JDEx)<br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS; DECLARATION OF TIMOTHY B. MCCAFFREY**<br>Date: August 26, 2022<br>Time: 10:30 a.m.<br>Room: 8A |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

A. Summary of Factual Background .......... 2

B. Procedural History .......... 4

II. ARGUMENT .......... 6

A. Legal Standards .......... 6

1. Federal Rule of Civil Procedure 68 – Offer of Judgment .......... 6

2. Federal Rule of Civil Procedure 54(d) .......... 7

B. California Law Applies to Attorney Fee Awards in this FEHA Action And Courts Have Wide Discretion to Determine the "Prevailing Party" .......... 7

C. Since Plaintiff is Not the Prevailing Party, Her Requests for Attorneys' Fees and Costs Should be Entirely Denied or Substantially Reduced .......... 8

D. Even if Plaintiff is Deemed A Prevailing Party, Special Circumstances Exist to Make An Award Of Fees Unjust .......... 10

E. The Court Should Apply A Negative Multiplier Under The Circumstances .......... 13

1. The Quality of Representation Factor Favors A Negative Multiplier .......... 14

2. The Other *Serrano* Factors Also Support a Negative Multiplier .......... 16

F. Plaintiff Should Not Be Awarded Fees And Costs Beyond The Explicit Terms Of The Rule 68 Offer .......... 18

G. The Hourly Rates Are Not Supported By Sufficient Evidence .......... 19

III. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page**

Cases

*Berkla v. Corel Corp*., 302 F.3d 909, 921 (9th Cir. 2002) ....................7
*Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 420–22 (1958)....................8, 16
*Cole v. Wodziak*, 169 F.3d 486, 489 (7th Cir.1999)....................9
*Cummings v. Benco Bldg. Servs*. 11 Cal.App.4th 1383, 1387 (1992)....................7-8
*Erie R. Co. v. Tompkins,* 304 U.S. 64, 1188 (1938)....................7
*EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 778 (2008)....................10
*Farrar v. Hobby*, 506 U.S. 103, 109-113; 114; 121-22 (1992)....................8
*Farrar*, 506 U.S. at 115....................9
*Fletcher v. City of Fort Wayne*, 162 F.3d 975 (7th Cir. 1998)....................7
*Fletcher,* 162 F.3d at 976....................9
*Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996)....................7
*Greene v. Dillingham Constr., N.A., Inc*., 101 Cal. App. 4th 418, 422 (2002)....................17
*Hsu v. Abbara*, 9 Cal. 4th 863, 877 (1995)....................8
*Jordan v. Multnomah Cty*., 815 F.2d 1258, 1263 (9th Cir. 1987)....................18
*Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001)....................18
*Laffitte v. Robert Half Int'l Inc*., 1 Cal. 5th 480, 489 (2016)....................13
*In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 837–38 (9th Cir. 2001)....................7
*Marek v. Chesny*, 473 U.S. 1, 11 (1985)....................6
*Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 447 (1998)....................13, 17
*Miller v. City of Portland*, 868 F.3d 846, 850 (9th Cir. 2017)....................18
*Moore v. Jas. H. Matthews & Co.*, 682 F. 2d 830, 839 (9th Cir. 1982)....................15
*Moss v. Associated Press*, 956 F. Supp. 891, 893 (C.D. Cal. 1996)....................7
*Myers v. California Check Cashing Stores, LLC*, No. 2:13-CV-2209-CMK (E.D. Cal. 2018) ....................14
*Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999)....................9

*Polee v. Central Contra Costa Transit Auth.*, 516 F. Supp. 3d 993 (N.D. Cal. 2021)…………..11, 12

*Polee,* 516 F. Supp. 3d at 997-98…………………………………………………………...18-19

*Screenlife Establishment v. Tower Video,* 868 F. Supp. 47, 50 (S.D.N.Y. 1994)……………………9

*Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982)……………………………………………...10,12

*Serrano v. Priest*, 20 Cal. 3d 25, 49 fn. 23 (1957)…………………………………………...13

*Stephens v. Coldwell Banker Commercial Group, Inc.* 199 Cal.App.3d 1394, 1405 (1988)………..10

*Vines v. O'Reilly Auto Enterprises*, 74 Cal. App. 5th 174, 183 (2022)…………………………...16

*Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 447 (2000)…………………………...17

Statutes

California Government Code § 12965(b)……………………………………………………...7-8

Fed. R. Civ. P. 11 (b)(4)………………………………………………………………...…….14

Fed. R. Civ. P. 33……………………………………………………………………………….15

Fed. R. Civ. P. 36……………………………………………………………………………….15

Fed. R. Civ. P. 54(d)………………………………………………………...…………….6-7

Fed. R. Civ. P. 68…………………………………………………..………………………….6-7

Local Rule 7-3.1……………………………………………………………………………….2

## I. INTRODUCTION

Plaintiff's motion for attorneys' fees and costs is a shocking overreach given the circumstances of this case and the low-end result achieved via a Rule 68 offer. It nonetheless presents some important issues and an opportunity for the Court to address and curtail the behavior of overzealous plaintiff's counsel in California employment litigation.

As explained in more detail below, Marriott submits that Plaintiff's counsel was unreasonable throughout this case and that resulted in avoidable litigation. They demanded millions, turned down settlement opportunities, refused to produce Plaintiff for deposition, and created work via unnecessary and spurious discovery motions – which did nothing at all to advance Plaintiff's case – only to then accepted Defendant's $60,000 Rule 68 offer after Plaintiff's deposition revealed that Plaintiff's Complaint contained material misstatements that Plaintiff and her counsel knew or should have known were untrue.

In particular, Plaintiff's counsel alleged that Plaintiff, a former housekeeper at Marriott's Irvine Spectrum property (the "Hotel"), contacted the Hotel's human resources representative Ashley Chavez on March 2, 2020 and advised Ms. Chavez that she had an upcoming doctor's appointment on March 3, 2020. (Complaint ¶¶ 22-23.) This allegation was material to Plaintiff's state law disability related claims because she was terminated for failing to return to work following a leave of absence on March 2, 2020. Thus, the Plaintiff's allegation was relevant to Marriott's knowledge of her status and whether and to what extent there was a duty to provide additional time off or engage in the interactive process (before Plaintiff was separated). Even though Marriott believed the allegation was untrue, it nonetheless had to litigate the case to prove it. As explained below, Plaintiff's counsel made the litigation process exceedingly difficult and time consuming, including refusing to produce the Plaintiff for deposition and thus necessitating a motion to compel her attendance. When Plaintiff finally did appear for her deposition, she admitted that this

material allegation was simply not true and that she had failed to respond to numerous calls from the Hotel during the week of March 2, 2020. (Pl. Dep. 170-71, 173)[1]. Plaintiff shortly thereafter accepted the Rule 68 offer for $60,000 – which was less than 1% of her $4,500.000 demand. Yet now she has the audacity to seek an outrageously high fee award.

Plaintiff's counsel should not be rewarded in any way for their behavior. Plaintiff not only filed her motion for attorney's fees without first meeting and conferring in violation of Local Rule 7-3.1, but her counsel seeks an excessive amount of fees and costs predicated on a staggering claim of 541.9 hours that dwarfs the 195 hours Marriott's counsel spent on this case. (McCaffrey Decl. ¶ 3 & Ex. B.) The outrageous and unbelievable amount of claimed hours is all the more appalling given that Plaintiff's counsel never took a single deposition nor opposed any dispositive motions and obtained a minimal result compared to her settlement demand. (McCaffrey Decl. ¶¶ 11, 14 & Ex. D.)

In sum, Plaintiff should not be deemed a prevailing party given that she recovered approximately 1% of her initial demand. (Id.) But even if the Court determines that she is a prevailing party, her request for fees is so unreasonable and inflated, that her motion should be denied outright. (Id. ¶ 3 & Ex. B.) In the alternative, if the Court determines that Plaintiff is entitled to any attorneys' fees, the amount of Plaintiff's request for fees should be substantially reduced and a negative multiplier applied because of her litigation conduct and low-end result.

### A. Summary of Factual Background

Plaintiff worked as a housekeeper at the Hotel from December 5, 2017, until March 13, 2020. (Complaint ¶ 11.) Plaintiff's starting pay was $14.00 an hour. *Id.*

---

[1] "Pl. Dep. 170-71, 73" refers to pages 170-171, and 173 of Plaintiff's deposition transcript. Similar references are made throughout this brief. A true and correct copy of the cited portion of Plaintiff's deposition and referenced exhibits are attached as Exhibit A to the Declaration of Timothy B. McCaffrey, Jr., filed concurrently herewith.

She was well liked and recognized during her time at the Hotel for her positive attitude. (Complaint ¶ 12 & Pl. Dep. 39-40.)

In January 2020, Plaintiff began experiencing stomach pains and ended up being hospitalized. (Pl. Dep. 63.) Plaintiff was diagnosed with Irritable Bowel Syndrome, which was attributed to her infrequent bowel movements. (Pl. Dep. 106 & Ex. 16.) Plaintiff's daughter contacted the Hotel regarding her mother's hospitalization and thereafter provided a doctor's note dated February 4, 2020, from Plaintiff's treating physician (Dr. Vu) advising that Plaintiff would be off of work until March 1, 2020. (Pl. Dep. 84 & Ex. 14.) Marriott honored the doctor's note and granted Plaintiff the requested time off. (Pl. Dep. 184-85.)

Beginning on March 1, 2020, the Hotel, initially through Plaintiff's supervisor (Yucelin Sanchez) and then its Human Resources representative (Ashley Chavez), attempted to contact Plaintiff via phone on multiple occasions to ascertain her status and whether and when she was going to return to work. (Pl. Dep. 113-14.) During her deposition, Plaintiff admitted to receiving these calls throughout the week of March 2, 2020. *Id.* Plaintiff further admitted that notwithstanding her allegations to the contrary, (Complaint ¶¶ 22-23), she did not return any of the calls until March 9, 2020. (Pl. Dep. 173.) Plaintiff's phone records, which were produced only shortly before her deposition despite repeated requests for them, showed that Plaintiff not only failed to call the Hotel in response to any of the multiple attempts to reach her, but also that she was making and receiving multiple personal phone calls during this same time. (Pl. Dep. 117 referring to Exs. 18, 20.)

Even though the Hotel could have terminated Plaintiff as of March 5, 2020 for being a no-call, no-show for three consecutive days, (Pl. Dep. 173-74 & Ex. 5), when Plaintiff finally did call the Hotel on March 9, 2020, Ms. Chavez allowed Plaintiff the opportunity to resign. (Pl. Dep. 116.) Plaintiff verbally tendered her resignation to Ms. Chavez and advised that she would confirm the resignation in writing but failed to do so. (McCaffrey Decl. ¶ 6.) Having again not heard from Plaintiff for several days,

the property processed her separation on March 13, 2020. (Id.)

Plaintiff, apparently with the help of her counsel, then sent an email to the Hotel on April 7, 2020, requesting reinstatement. (Pl. Dep. 179, 185-86.) The property denied the request. (McCaffrey Decl. ¶ 8.)

**B. Procedural History**

Plaintiff filed suit on June 9, 2020 in Orange County Superior Court alleging a myriad of state law disability related claims under the California Fair Employment and Housing Act ("FEHA"). (Docket 1.) Because Plaintiff did not plead her citizenship in the Complaint, it was not removable on its face. (Docket 1; McCaffrey Decl. ¶ 8.)

Hoping to reduce disruption of its overburdened, pandemic shortened staff and minimize litigation expense, Marriott attempted to informally resolve the matter throughout late 2020 and early 2021. (McCaffrey Decl. ¶ 9.) But Plaintiff refused to engage in any resolution discussions. (Id.) Plaintiff did, however, initially agree to mediate the case in early March 2021, to only do an about face and refuse to participate in mediation unless Marriott responded to all of her discovery requests. (Id.) Plaintiff then filed four completely unnecessary motions to compel in state court. (Id.) The motions were denied in their entirety. (Id.) With settlement prospects on hold, Marriott served its own discovery, including specific questions regarding Plaintiff's citizenship. (Id.) After receipt of those discovery responses, Marriott timely removed the action to this Court on May 5, 2021 per 28 U.S.C. §§ 1332, 1441. (Docket 1.)

In response to Marriott's motion, Plaintiff sent correspondence threatening sanctions. (McCaffrey Decl. ¶ 10 & Ex. C.) Plaintiff's counsel also engaged in a lengthy call with Marriott's counsel arguing that the motion to remand was untimely and inappropriate and refused to consider the well-established and ample authority in the Central District that disfavors premature or improvident removal (*i.e.*, attempting removal of actions that are not removable on the face of the complaint). (Id.)

Notwithstanding her counsel's bluster and threats (unnecessary attorney time that her counsel now incredibly seeks to recover), Plaintiff never filed a motion for remand. (Id.)

Instead, Plaintiff agreed to attend a private mediation on August 9, 2021. (Id. ¶ 11.) Without any prompting, Plaintiff's counsel voluntarily shared her mediation brief on the eve of mediation demanding an outrageously high sum of more than $4,783,227. (Id. & Ex. D.) The mediation ended when Plaintiff rejected a $110,000 "mediator's proposal." (Id.)

Marriott thereafter attempted to schedule Plaintiff's deposition to only be put off and stonewalled on multiple occasions thereby necessitating a motion to compel (that was granted). (Id. ¶ 12; Docket 12, 23.) When Plaintiff finally did appear for her deposition on March 10, 2022, she freely admitted that notwithstanding her allegations in the Complaint to the contrary, she never actually called the property during the week of March 2, 2020 (Pl. Dep. 170-71), and that she did not have any medical restrictions or excuse for not returning to work on the March 1, 2020 pursuant to her treating physician's note. (Pl. Dep. 159. & Ex. 14).

Even though Marriott strongly believed in its ability to defend the case, the parties were about to embark upon multiple depositions, expert discovery, and other trial preparation, as well as the preparation of a dispositive motion under Rule 56. (McCaffrey Decl. ¶ 13.) Thus, on March 17, 2020, Marriott utilized Rule 68 and made an offer of judgment for $60,000 "exclusive of all claims for reasonable attorneys' fees and costs incurred as of the date hereof (March 17, 2020) . . ." (McCaffrey Decl. ¶ 13 & Ex. E.) In response, Plaintiff's counsel attempted to negotiate the terms of the Rule 68 offer. (Id.) Plaintiff's counsel offered to resolve the matter for $400,000 exclusive of fees and costs, but would not quantify the amount of fees and costs. (Id.) Before Marriott responded to that demand, Plaintiff accepted Marriott's Rule 68 offer for $60,000. (Id.)

Now Plaintiff's attorneys seek a staggering $284,597.50 in lodestar fees (based on 541.8 claimed hours of work)[2] with a multiplier of 1.5, for a total attorneys' fees request of $426,896.25, as well as an additional $12,298.91 in costs. This claimed amount includes time spent to draft Plaintiff's motion for attorneys' fees and an additional 10 hours anticipated to spend in reply to this Motion, even though Marriott's Rule 68 Offer explicitly limits reasonable fees and costs through the date of the offer (March 17, 2022).

As explained further below, Plaintiff's motion should be denied outright or substantially reduced given the circumstances and her outrageously high and obviously inflated fee request.

## II. <u>ARGUMENT</u>

### A. Legal Standards

#### 1. <u>Federal Rule of Civil Procedure 68 – Offer of Judgment</u>

Federal Rule of Civil Procedure ("FRCP") 68 is a risk-shifting device built into the federal rules to encourage settlements and avoid unnecessary trials. The rule allows defendants to make an offer of judgment at any point up to 14 days before trial. The offer of judgment resembles a settlement offer from a defendant, and it carries with it some important consequences if the plaintiff does not accept it. Plaintiffs who reject an offer of judgment that is more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected. In short, application of Rule 68 requires plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates." *Marek v. Chesny*, 473 U.S. 1, 11 (1985). "Once accepted, an offer of judgment becomes a settlement agreement." *Miller v. City of Portland*, 868 F.3d 846, 850 (9th Cir. 2017). A plaintiff who accepts a Rule 68 offer may rely on the *plain language of*

[2] In contrast, Marriott's counsel spent 195 hours on this case. (See McCaffrey Decl. __ & Ex. B (a true and correct copy of defense counsel's time entries).)

*the offer*. If the offer provides for reasonable attorney fees, the plaintiff's request for fees will be decided by principles governing contracts instead of principles governing the fee provision in the underlying statute. *Id.* at 851.

2. Federal Rule of Civil Procedure 54(d)

Upon a valid acceptance of a Rule 68 offer, Rule 54(d) permits the prevailing litigant to recover its costs and attorney fees by filing a motion. Although the language of Rule 68 would **appear to make the recovery automatic if the offer is accepted, it does not have such an effect**. *Berkla v. Corel Corp*., 302 F.3d 909 (9th Cir. 2002). If a party's success is only minimal, it may be denied "prevailing party" status despite the entry of judgment. *See, e.g.*, *Fletcher v. City of Fort Wayne*, 162 F.3d 975 (7th Cir. 1998) (acceptance of offer for nuisance value does not entitle party to costs). In exercising its discretion, a district court must "specify reasons" for its refusal to award costs. *Berkla*, 302 F.3d at 921.

**B. California Law Applies to Attorney Fee Awards in this FEHA Action And Courts Have Wide Discretion to Determine the "Prevailing Party"**

It is well-established that "[u]nder the *Erie* doctrine [*Erie R. Co. v. Tompkins,* 304 U.S. 64, 1188 (1938)], federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). When it comes to attorneys' fees, the Ninth Circuit has declared that "[a] federal court sitting in diversity applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case." *In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 837–38 (9th Cir. 2001). Since Plaintiff brought forth state law claims under the FEHA, California law applies in calculating attorneys' fees.

California Government Code § 12965(b) represents one statutory exception to the general rule that each party bears its own costs in litigation. *Moss v. Associated Press*, 956 F. Supp. 891, 893 (C.D. Cal. 1996). Section 12965(b) provides that courts

may, in their discretion, award reasonable attorney fees and costs to the prevailing party. *Id*.

In determining prevailing party status, California law relies upon and often follows federal case law since the language, purpose, and intent of the California FEHA are virtually identical to the federal anti-discrimination acts. *Cummings v. Benco Bldg. Servs*. 11 Cal.App.4th 1383, 1387 (1992). "California courts have adopted the methods and principles developed by federal courts in employment discrimination claims arising under Title VII… and under the federal Age Discrimination Act. *Id*. (citations omitted).

### C. Since Plaintiff is Not the Prevailing Party, Her Requests for Attorneys' Fees and Costs Should be Entirely Denied or Substantially Reduced

Generally, attorneys' fees may be awarded only to a prevailing party, as may be either the plaintiff or the defendant, or, in some circumstances, neither party, and may be apportioned between the parties in relation to the issues on which they prevailed, or adjusted on the basis of limited or partial success. *Farrar v. Hobby*, 506 U.S. 103, 109-113 (1992). Alternatively, apart from considering prevailing party status, an award may be made "against" parties who file frivolous or bad faith lawsuits.[3]

When determining which party prevailed, for purpose of awarding attorney's fees, courts generally have broad discretion, looking at all the circumstances. As set forth by the California Supreme Court in *Hsu v. Abbara*, 9 Cal. 4th 863, 877 (1995): "*in determining litigation success,* courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" *See also Farrar*, 506 U.S. at 114.

---

[3] This latter circumstance is the exact situation the U.S. Supreme Court addressed in *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 420–22 (1958), holding that courts have discretion to award a prevailing defendant its attorneys' fee upon a finding that a plaintiff's FEHA action is "frivolous, unreasonable, or groundless, even though not brought in subjective bad faith."

Justice O'Connor's concurrence in *Farrar* sets the test to determine whether a prevailing party achieved enough success in the underlying suit to be entitled to an award of attorney's fees. The "relevant indicia of success" in such cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purposes of the litigation. *Farrar*, 506 U.S. at 121-22. The first factor bears the most weight, whereas the second factor bears the least. *Id*. (citations omitted). A court may "lawfully award low fees or no fees" *without* figuring a lodestar, depending upon the amount and nature of the damages awarded. *Id.* at 115. Federal courts therefore possess broad discretion to assess the "success" of each party. For instance, "a party must succeed on a significant issue in litigation to be a prevailing party; success on purely technical or de minimis claim does not qualify. *Screenlife Establishment v. Tower Video*, 868 F. Supp. 47, 50 (S.D.N.Y. 1994).

The Seventh Circuit consistently applies the 10% rule, *i.e.*, "a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated *as if* he had not prevailed." *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) (RICO case); *see also Cole v. Wodziak,* 169 F.3d 486, 489 (7th Cir.1999) (Fair Housing Act action); *Fletcher,* 162 F.3d at 976 (civil rights action). "Recovery of less than 10% of the claim shows that, even making allowances for puffing in the complaint, the defendant has won on the bulk of the seriously disputed items." *Perlman*, 185 F.3d at 859. This rule makes sense as a plaintiff's irrational settlement demand will only serve to prolong litigation that could otherwise have been resolved if a more reasonable approach had been adopted.

Applying these factors here, Marriott submits that Plaintiff is not entitled to prevailing party status. The difference between the judgment recovered and the recovery sought certainly cuts against Plaintiff. Plaintiff initially demanded $4,783,227. She ultimately accepted $60,000 (approximately 1% of her initial offer). (She also rejected the $110,000 mediator's proposal.) (McCaffrey Decl. ¶ 11 & Ex.

D.) Even if she were to receive all of her exorbitant fees ($284,597.50) – and she should not receive any such award – the aggregate would still be less than 10% of her initial demand.

In addition, Plaintiff has not prevailed on any complicated legal issue. Her case and claims were straightforward and (as described above) predicated upon materially false allegations about her alleged efforts to contact the property about her status. The litigation also served no discernable public purpose. The outcome only affected Plaintiff. Accordingly, the Court should deny Plaintiff's motion for attorneys' fees on the grounds that she is not a prevailing party.

**D. Even if Plaintiff is Deemed A Prevailing Party, Special Circumstances Exist to Make An Award Of Fees Unjust**

Even if the Court were to grant Plaintiff prevailing party status, the motion should be denied because there are "special circumstances [that] would render [an attorney fee] award unjust." *Stephens v. Coldwell Banker Commercial Group, Inc.* 199 Cal.App.3d 1394, 1405 (1988). "A fee request that appears unreasonably inflated is [one such] special circumstance permitting a trial court to reduce the award or deny one altogether." *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982). "If ... the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed, a severer reaction is needful....", *i.e.*, a total denial of the fee motion. *Serrano*, 32 Cal. 3d at 635; *see also EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 778 (2008) (affirming negative multiplier where the record showed that the prevailing party's lawyers misrepresented the number of hours worked).

It is hard to fathom a more appropriate case for application of the *Serrano* special circumstances rule. The great disparity between Plaintiff's claimed hours and what Marriott's counsel billed certainly raises a gigantic red flag. Plaintiff's counsel

claims to have spent ***541.9 hours*** on this case. In contrast, Marriott's counsel billed ***195 hours***. (McCaffrey Decl. ¶ 3 & Ex. B.) In other words, **Plaintiff's counsel claims to have spent nearly three times the amount of time as Marriott's counsel**. Yet Plaintiff's counsel **did not take a single deposition, did not oppose any dispositive motions, did not retain or engage in any expert discovery, and did absolutely no trial preparation**. (McCaffrey Decl. ¶ 14.) Instead, Plaintiff's counsel essentially served one round of the same written discovery requests (once in state court, once in federal court), sent some cut and paste form meet and confer letters, and filed multiple pointless discovery motions. (Docket 13-14, 23.) Marriott had to respond to the discovery, engage in meet and confer, and oppose the multiple pointless motions. (McCaffrey Decl. ¶ 14.) Thus, Plaintiff's efforts in this regard do not explain the massive disparity in claimed hours since Marriott's counsel had to spend time on the same projects (and it takes longer to respond to discovery than it does to propound it). (Id.)

Moreover, Marriott's counsel had to make repeated efforts to schedule Plaintiff's deposition which were stonewalled. Marriott ultimately had to file a motion to compel Plaintiff's attendance at deposition (Docket 12, 23) as well as prepare for and conduct Plaintiff's deposition (which necessarily required additional attorney time that Plaintiff did not have to spend) (*i.e.*, it takes more time to prepare to conduct a plaintiff's deposition (outline, organize exhibits, etc.) than it does to prepare the plaintiff for it).[4] (McCaffrey Decl. ¶ 12.) Thus, Marriott submits that this great disparity in hours simply cannot be explained other than by the obvious – Plaintiff's attorneys' fees request is grossly inflated.

Further support for this conclusion is found in *Polee v. Central Contra Costa*

[4] Further proof of Plaintiff's inflated time records can be found in her counsel's claim that he spent 1.1 hours preparing Plaintiff for her deposition. [Pimentel Time Record 5/81] . In contrast, Plaintiff testified that the extent of her preparation was a 15-minute phone call with her counsel. (Pl. Dep. 21.). This is essentially a four-fold inflation of the time actually spent.

*Transit Auth.*, 516 F. Supp. 3d 993 (N.D. Cal. 2021). In that case the state law employment matter was heavily litigated before the plaintiff accepted the defendant's Rule 68 offer of $250,000. *Id.* at 999-1000. There were multiple depositions, written discovery, expert reports and discovery, trial preparation, multiple court status conferences, motions to compel (that were necessary), three in person settlement conferences, and post-judgment work related to Plaintiff's request for fees and costs. *Id.* In other words, the parties in *Polee* had engaged in a significant amount of pre-trial litigation activity, far more than occurred in this case, and yet Polee's counsel claimed 339.8 hours (in comparison to his defense counsel's 310 hours). Thus, both sides spent about the same amount of time on the case. *Id.* at 1000 (noting the "modest" difference was not surprising given that the plaintiff had the burden of proof). In sum, Polee's counsel did far more work than Plaintiff's counsel in this case, and achieved a far better result, yet Polee's counsel claimed 339.8 hours, whereas Plaintiff's counsel is claiming 541.9 (*i.e.*, ***Plaintiff's counsel claims 202.1 hours more than Polee's counsel for a fraction of the work***). The facts of *Polee* are thus further support for the inescapable conclusion that Plaintiff's counsel's claimed hours are excessive and grossly inflated.

Accordingly, Marriott submits that Plaintiff's obviously over-inflated time warrants an outright denial of her motion under *Serrano*. If the Court awards Plaintiff's counsel anything under these circumstances it will in essence be encouraging Plaintiff's counsel (and those that practice in this manner) to continue to submit obviously inflated fee petitions knowing that the worst thing that will happen is that the amount sought will only be reduced.[5] This is precisely what *Serrano* empowers and encourages the Court to address and prevent. *Serrano*, 32 Cal. 3d at 635. Marriott submits that this "severer reaction" is also warranted here given that Plaintiff's counsel filed a complaint with materially false allegations and thereafter not

[5] It will also deter defendants from utilizing Rule 68 offers.

only continued to litigate the case knowing it was predicated upon an untruth but did so in a fashion that did nothing to truly advance their client's interests. All the while forcing Marriott to expend much more than it should have to defend this baseless case. The Court should deny Plaintiff's motion in its entirety.

In the alternative, if the Court is nonetheless inclined to award something, Plaintiff's claimed lodestar hours should be significantly reduced to match, if not be reduced below, the time that Marriott's counsel billed for this case (*i.e.*, Plaintiff's counsel's lodestar should be based on no more than 195 hours). *Cf. Polee, supra* (implicitly recognizing that opposing counsel hours should generally be comparable).

### E. <u>The Court Should Apply A Negative Multiplier Under The Circumstances</u>

Assuming *arguendo* that the Court is nonetheless inclined to award Plaintiff's counsel something, there are numerous reasons to apply a negative multiplier in this case, to wit, (1) Plaintiff's counsel's materially false allegation in her complaint; (2) Plaintiff's counsel's refusal to produce Plaintiff for deposition for months, necessitating a motion to compel her attendance at deposition, which was granted; (3) Plaintiff's limited success (less than the jurisdictional minimum of this Court) in light of her outrageously high initial demand; (4) Plaintiff's rejection of the $110,000 mediator's proposal in August 2021 (that would have resulted in a better outcome for Plaintiff than achieved (assuming even a 45% contingency fee); and (5) Plaintiff's unnecessarily overzealous and unproductive litigation strategy (*e.g.*, insisting Defendant admit the genuineness of medical records it had never seen or that Plaintiff cleaned rooms in a "pristine" fashion) that did nothing to advance her case and simply created unnecessary work. In sum, there was nothing reasonable about Plaintiff's counsel's approach to this case. This motion is a perfect opportunity for the Court to deter Plaintiff's counsel from doing it again, as well as any other plaintiff's counsel that believe that this is the manner in which civil litigation ought to be conducted.

*Serrano III,* provides the following pertinent factors to determine whether to

apply a multiplier on the attorneys' fees: (1) the quality of the representation, (2) the novelty and complexity of the issues, (3) the results obtained, and (4) the contingent risk presented." *Serrano v. Priest*, 20 Cal. 3d 25, 49 fn. 23 (1957). *Meister* also recognized that although the *Serrano* factors do not touch on time reasonable spent, that is also an appropriate factor. *Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 447 (1998). These factors tend to inform one another. *See also Polee*, 516 F. Supp. 3d at 1002 ("Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.") citing *Laffitte v. Robert Half Int'l Inc*., 1 Cal. 5th 480, 489 (2016).
Applying these factors, the Court should apply a negative multiplier here.

1. **The Quality of Representation Factor Favors A Negative Multiplier**

As for the quality of representation, Marriott submits that Plaintiff's materially false allegation that she "called" the property's Human Resource representative on March 2, 2020 to advise of a doctor's appointment on March 3, 2020, (Complaint ¶ 23), speaks volumes. As noted, Plaintiff admitted that this simply was not true. (Pl. Dep. pp. 170-71.). Plaintiff's counsel should have known this with a simple check of her phone or phone records. In fact, Marriott repeatedly requested Plaintiff's phone records, but did not receive them until shortly before her deposition (which Plaintiff had inappropriately delayed). (McCaffrey Decl. ¶ 12.) Marriott submits that her counsel has no excuse to make such a material misrepresentation in the Complaint without at least checking Plaintiff's phone or phone records. Indeed, Rule 11 and Rules of Professional Conduct, require a reasonable investigation before submitting any pleading. Fed. R. Civ. P. 11 (b)(4).

Plaintiff counsel's misrepresentation is compounded by the fact Plaintiff's gastroenterologist apparently told her that she was fine on March 3, 2020. (Pl. Dep.

106 & Ex. 16). Thus, at the time Plaintiff filed the complaint she also knew that the March 3, 2020 appointment confirmed that she had no medical restrictions and could have and should have been back to work. (Pl. Dep. 108 & Exs. 14, 16). Accordingly, Plaintiff and her counsel knew – or should have known – that Plaintiff's entire case was predicated upon an untruth and likely subject to dismissal via summary judgment (or motion to dismiss is plead truthfully). *See Myers v. California Check Cashing Stores, LLC*, No. 2:13-CV-2209-CMK, (E.D. Cal. Aug. 22, 2018) (granting summary judgment and awarding attorneys' fees to the employer under *Christianburg* where plaintiff failed to provide her employer with a written medical certification to permit her pregnancy leave, despite her employer requesting a doctor's note on three (3) separate occasions.). Yet they filed and pursued the lawsuit.

Yet another example of dubious decision making is Plaintiff's counsel's refusal to produce Plaintiff for deposition – which necessitated a motion to compel her attendance – and prevented Marriott from discovering these facts for months. (Docket 12, 23.) Indeed, once the mediation proved unsuccessful in August 2021, Marriott made repeated efforts to schedule Plaintiff's deposition, only to be put off and strung along by Plaintiff's counsel. (McCaffrey Decl. ¶ 12.). This caused both parties to incur unnecessary fees and costs. (Id.) Plaintiff obviously needed to appear for her deposition pursuant to the Federal Rules of Civil Procedure, and there is no basis to refuse that basic form of discovery. Yet now Plaintiff seeks to recoup hours for this time as well. This is further evidence of her unreasonableness and undermines any claim of quality of representation. There is nothing reasonable or appropriate about failing to produce the Plaintiff for deposition.

A final point on the quality of representation is that the vast majority of the claimed attorney time was spent on Plaintiff's discovery motions which yielded nothing. *Moore v. Jas. H. Matthews & Co.*, 682 F. 2d 830, 839 (9th Cir. 1982) (hours are reasonable if they were reasonably directed to further the client's interests, as viewed at the time the work was performed). Plaintiff's state court motions were

denied. (McCaffrey Decl. ¶ 9.) She then served the same discovery in federal court, including interrogatories based on California's form employment interrogatories (which do not comply with FRCP 33), followed up by largely unsuccessful motions to compel. (McCaffrey Decl. ¶ 14 & Docket 23.). Plaintiff gained no useful information by her these efforts. (McCaffrey Decl. ¶ 15.) She only prevailed on some aspects of one motion because Marriott's responses were technically non-compliant with FRCP 36. (Id.) But Plaintiff gained no information at all that was actually germane. (Id.) Indeed, the majority of the RFAs on which she prevailed asked Marriott to admit the genuineness of medical records that it had never seen prior to the litigation. (Id.) These records could obviously be attested to by the health care providers. The other questions were related to Plaintiff's job performance, which had nothing at all to do with the reasons for Plaintiff's separation. Plaintiff's job performance was never in dispute. (Id.) She was terminated for not returning to work and failing to communicate with her employer. Thus, it is Marriott's position that Plaintiff simply created work for the sake of creating work and the hours spent on her written discovery was not reasonable. To quote the legendary John Wooden, the Court should **"not mistake activity with achievement."**

### 2. The Other *Serrano* Factors Also Support a Negative Multiplier.

Plaintiff's claims were also straightforward and her success was limited. As noted, Plaintiff demanded $4,783,227 in August 2021, but ultimately accepted $60,000 in March 2022. This reflects a modest result at best. *Vines v. O'Reilly Auto Enterprises*, 74 Cal. App. 5th 174, 183 (2022) ("a reduced fee award is appropriate when a claimant achieves only limited success") (citations omitted). Furthermore, the only thing that changed between her $4,783,227 demand and acceptance of $60,000 was her deposition testimony about her failure to communicate with the property and complete lack of medical restrictions after March 1, 2020. In other words, this was not a situation where Marriott produced evidence to diminish Plaintiff's case. To the

contrary, the damning information was within Plaintiff's possession, custody, and control the entire time. There is nothing reasonable about pursuing a case that Plaintiff's counsel knows, or should know, is unreasonable or groundless. *Cf. Christiansburg, n. 2, supra*.

The contingent risk was also low given the settlement history and Plaintiff's acceptance of Marriott's Rule 68 offer. Plaintiff had multiple opportunities to resolve this case at the level she ultimately did. Plaintiff, however, refused to negotiate informally and thereafter pulled the plug on mediation in March 2021 while the matter was still in state court. (McCaffrey Decl. ¶ 9.) Then in August 2021, Plaintiff rejected a $110,000 mediator's proposal. (Id. ¶ 11.) Even assuming a 45% contingency fee agreement, Plaintiff would have received more than she ultimately accepted in March 2022. This begs the question as to why that $110,000 proposal was turned down and whether it was reasonable to keep pursuing the case at that point. *See Meister*, 67 Cal. App. 4th at 449 (1998) ("plaintiff's attorneys achieved nothing by continuing to expend their time after [having rejected such] offer"). This is particularly so given that Plaintiff and her counsel (as opposed to Marriott) had the information that revealed the frailty of her case.

While the Ninth Circuit seems to maintain a strict standard disregarding prior settlement offers when a Rule 68 offer is made and rejected prior to a jury verdict,[6] we are not aware of a federal case addressing the standard for considering prior settlement offers when a Rule 68 offer is accepted. California courts are split on the issue of the utility of settlement history on a motion for fees and costs. *Meister*, 67 Cal. App. 4th 437 (trial court's decision to consider an informal settlement offer to deny plaintiff's attorneys' fee request affirmed); *see also Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) (trial court's decision in a FEHA action to consider the entire course of litigation, including pretrial matters, settlement negotiations,

[6] *See Berkla*, at 921.

discovery, litigation tactics, and the trial itself was affirmed in awarding a plaintiff's attorneys' fees request following trial on the merits); *with Greene v. Dillingham Constr., N.A., Inc*., 101 Cal. App. 4th 418, 422 (2002) (disagreeing with *Meister*). Marriott submits that the settlement history is relevant in a case such as this one when the Plaintiff has the information necessary to make an informed decision but rejects an opportunity to resolve the case at an early juncture. Indeed, arguably the only person that stood to gain by Plaintiff's rejections of the $110,000 was Plaintiff's counsel via a fee application. But this is not reasonable and antithetical to the notion that the client's interests are paramount.

Furthermore, and perhaps the most critical point on this fact, is that the parties in *Meister, Vo,* and *Greene* had their day in court and received final verdicts. In other words, those plaintiffs took the inherent and time-consuming risk of a jury trial. In contrast, Plaintiff's counsel avoided that risk altogether and simply took the sure thing by accepting the Rule 68 offer (before taking a single deposition) and submitted this outrageous fee motion.

Given these circumstances, Marriott requests that if the Court is inclined to award any fees, the Court should apply a negative multiplier of 0.2 to any lodestar amount it derives.

**F. <u>Plaintiff Should Not Be Awarded Fees And Costs Beyond The Explicit Terms Of The Rule 68 Offer</u>**

Plaintiff also seeks fees and costs after March 17, 2022, even though the Rule 68 offer plainly provides for reasonable costs and attorneys' fees up to March 17, 2022. "Once accepted, an offer of judgment becomes a settlement agreement." *Miller v. City of Portland*, 868 F.3d 846, 850 (9th Cir. 2017). A plaintiff who accepts a Rule 68 offer may rely on the *plain language of the offer.* If the offer provides for reasonable attorney fees, the plaintiff's request for fees will be decided by principles governing contracts instead of principles governing the fee provision in the underlying statute. *Id.* at 851. Marriott submits that the terms of the Rule 68 offer, and in

particular the March 17, 2022 cut-off, are clear and unambiguous. Accordingly, Plaintiff's request for fees and costs after that date should be denied.

**G. <u>The Hourly Rates Are Not Supported By Sufficient Evidence</u>**

Finally, Plaintiff's requested hourly rates are not supported by sufficient evidence. In particular, Mr. Pimentel's $700/hour request is unreasonable and unsupported. To determine whether counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty*., 815 F.2d 1258, 1263 (9th Cir. 1987). For instance, in *Polee*, plaintiff's counsel was awarded his requested fee after great detail to justify his increased hourly rate, including a chronology of his rate in the past five years, a description justifying his award in previous cases, a survey showing growing billing rates in the San Francisco area, and four declarations from Bay Area attorneys practicing in the same field that attest to plaintiff's request. *Polee*, 516 F. Supp. 3d at 997-98.

In contrast, here, Plaintiff's counsel provided nothing but their own self-serving declarations. This hardly meets the required evidentiary standard to justify their hourly rates. Mr. Pimentel does not indicate under what circumstances he has been awarded a $700 rate. He also purports to declare, without proper foundation, in an over-generalized description of what "Big Law" attorneys bill without a deeper look into the specialty of these attorneys or the quality of representation or the resources they provide. Plaintiff's counsel also altogether fails to provide any relevant survey or affidavits from other local attorneys as to the reasonableness of their requested rates. Accordingly, Mr. Pimentel should be denied his requested rate of $700 and have it reduced to that of Mr. Murray's, which as a professional courtesy, Marriott does not

contest.

## III. CONCLUSION

For the foregoing reasons, Marriott respectfully requests that this Court deny or in the alternative substantially reduce Plaintiff's motion for attorneys' fees and costs.

Dated: August 5, 2022

Respectfully Submitted,

Timothy B. McCaffrey, Jr.

Attorneys for Defendant
Marriott International, Inc.